BEALE et al. v. SPATE et al.

(Circuit Court, S. D. New York. June 27, 1896.)

PATENTS—LIMITATION OF CLAIMS—STAIR PADS.

The Sperry patent, No. 363,695, for improvements in stair pads, is limited by the prior state of the art, and especially by the language of the specifications and claims, to a pad having, among other things, a loose, separate, and disintegrated filling, and a covering case sewed or secured to the edges of the stiff base piece.

This was a suit in equity by Joseph H. Beale and others against Frederick Spate and others for alleged infringement of letters patent No. 363,635, granted to Timothy S. Sperry, May 24, 1887, for improvements in stair pads. Final hearing.

This action is based upon letters patent No. 363,695, granted to Timothy S. Sperry, May 24, 1887, for improvements in stair pads. The pad is composed of three parts. (1) A stiff base of uniform thickness having one edge turned over to fit the edge of the step. (2) A flexible covering secured to the edges of the base part. (3) An elastic body of loose material interposed between the stiff base and flexible covering. The patentee asserts that a pad thus constructed has a stiff seating upon the step, that it forms an elastic support for the carpet, that its elasticity and shape can be easily restored when worn down by use and that it can be made cheaply. The stiff base is constructed of suitable material to retain it in the desired flat shape, such as thin wooden or paper boards. The front edge of the base is curved over to fit the front edge of the step and aid in retaining the pad in position. The covering may be of any suitable cloth or netting. The elastic material, which is loosely disposed in the closure between the base and the covering may be cotton, hair, granulated cork, chaff, shavings, jute, or any other convenient material. "These," says the description, "are disposed in a loose, separate, or disintegrated condition, so that when hardened by being trodden they can be 'worked' or separated again to restore the necessary softness or elasticity to the pad. * * * When the elastic material becomes deadened or trodden down by wear, it is only necessary to take up the pad, bend it slightly in the direction of the covering part, a, shake it well, and pick or liven up the loose material by working it in any suitable way and the elasticity will be restored." This process of working up the elastic material after it has become deadened by use is made easy by the fact that it is placed loosely in the case. The patentee describes the prior art as follows: "The state of the art shows that stair pads have been made of cotton felt of a soft, moderately yielding, and elastic character, sufficiently rigid and stiff, however, to form a slab of unequal thickness and retain its shape, and having its front edge curved hook-like to form a lip to hook over the edge of the step; that they have been made up of a layer of cotton or other fiber placed between a netting on one side and a fabric or cloth on the other side, and the whole folded and stitched, and that such pads have been made of granulated cork and pulp combined, forming a composite molded sheet;

but my improvement differs from these things in the particulars stated, by which the pad is formed into an elastic case having a stiff inelastic base or seating, and which gives the advantage of allowing the pad formed by said case to be re-formed with a proper shape and fullness when worn down. My improvement is distinguished from all other stair pads in this, that it is made of an unyielding part, a covering part having a suitable fullness for forming a case, and a filling of loose elastic material, and that as an elastic pad its form can be restored after being worn down by merely shaking and loosening up the case as an entirety to restore the elastic function of the loose confined material. These distinguishing features and their advantages, so far as I know and can find, are not possible in pads formed of single sheets of elastic material folded or molded." The patent has three claims. They are as follows: "(1) As an improved article of manufacture, a stair pad consisting of a stiff base part, a covering case part secured to the edges thereof, and a body of elastic material loosely disposed between the base and the covering part, substantially as described. (2) A stair pad consisting of a stiff base part of uniform thickness, a covering case part having a suitable fullness attached to the edges of the base, and an interposed body of granulated cork, substantially as described. (3) A stair pad consisting of a base part of stiff unyielding material of uniform thickness having an edge curved-lip bend, d, a fabric cover having a fullness sewed to the edges of said base part, and an interposed body of elastic material, substantially as described." The defenses are noninfringement and want of patentable novelty.

Arthur v. Briesen and Harry M. Turk, for complainants.
Robert N. Kenyon, for defendants.

COXE, District Judge (after stating the facts as above). Sperry did not invent a stair pad. His patent relates only to improvements upon the existing art. He fully recognizes this fact in the frank statement found at the end of the description. Every feature of his pad, considered separately, was old, unless limited to the details of construction described and shown. The stiff base, the covering case, the elastic material and the curved lip were well known in this particular art. William Warren was granted a patent for a stair pad in 1883. In speaking of the then prior art he says:

"The stair pads now in use consist of a bag of cloth, which is first sewed up and afterwards filled with cotton, properly distributed, and finally knotted or tied in a number of places, to prevent the displacement of the cotton when the pad is subjected to wear."

In the same year a patent was granted to Henry W. Mather for "a felt stair pad made sufficiently rigid or stiff to retain its form, as shown, and having a lip, c, formed on its front edge, to take over the edge of the step."

Should it be found that this pad possessed insufficient elasticity, or should it lose its elasticity by wear, what more natural than to reinforce it by a layer of cotton? It will hardly be insisted that one who did this, and covered the whole with "any suitable cloth" to hold the cotton in place, would be entitled to rank as an inventor. And yet, broadly speaking, this is what Sperry did. Mather showed him the stiff base and retaining lip and the old pillow pad showed him how to produce elasticity. He sewed the latter to the former and thus produced the desired effect. It is manifest that a construction of the claims broad enough to cover such a

combination would invalidate them. If patentability resides in the claims at all it must be found, therefore, in matters of detail. The history of the proceedings in the patent office as well as of the prior art renders it impossible to consider the patent otherwise than as limited to improvements which can hardly be called essential. Furthermore, the law is imperative that the language of the description and claims when clear and unambiguous must be adhered to even though the court be of the opinion that the patentee has unnecessarily restricted his claims. Having said his invention is a narrow one the court cannot treat it as a broad one. He must be held strictly to his own statements. It is his misfortune if he has made his claims too narrow. The only place to correct such mistakes is in the patent office. The court is powerless in such cases. What, then, are the combinations of the first and third claims? The learned counsel for the complainants discuss the second claim also, but it is unnecessary to consider it for the reason that the elastic filling of the claim is confined to granulated cork and there is no pretense that the defendants ever used such a filling. The complainants' expert has confined his discussion to the first and third claims, and the defendants evidently understand that they are only charged with infringement of these claims as no allusion to the second claim is made in their brief. The proposition that the claim can be sustained upon the theory that granulated cork is an equivalent for the other elastic materials mentioned in the description is untenable for the reason, among others, that such a construction would make the first and second claims substantially identical.

The elements of the first claim are three: First. A stiff base. Second. A covering case secured to the edges of the base. Third. A body of elastic material loosely disposed between the base and the covering. The third claim is for the same combination except that it is still further limited to a base part "having an edge curved-lip bend, d," and a covering "sewed to the edges of the said base part." The complainants contend that these claims should be construed by omitting or ignoring the limiting words relating to the covering and the elastic material. In other words, that they cover a pad where the covering is not sewed to the edges of the base part or secured to the edges in any way, and whose elastic material consists of sheets or layers of cotton forming one homogeneous mass. Is it not plain that unless the express language of the claim is to be arbitrarily disregarded, that the covering must be secured to the edges of the base in some way; if not by sewing then by some equivalent means? The original first claim did not contain the words "secured to the edges thereof." It was only when these words were added that the claim was allowed. And yet it is said that the rejected claim and the claim as allowed are identical. This cannot be. In every case where construction is permissible the court should be eager to adopt the view most liberal to the patent; but this is too plain a case. To hold that words, inserted with such formality, mean nothing, is going beyond any reported authority. Again, it is contended, that the word

"loosely" has reference to the elastic material in its relation to the base and covering; if "loose" as to these the requirements of the claims are answered. If so construed would not the claims cover a structure where the old pillow pad of the prior art was thrust into the space between the cover and the base? Would not the pillow be "loose" as to the other elements of the combination? Indeed, would not the claims cover a cushion of India rubber or carpet thus placed loosely in the pocket formed by the cover and the base? It is plain that in order to maintain patentability it was necessary to restrict the claims to a much narrower combination. But the patentee, by repeated use of expressions which confine the words "loose" and "loosely" to the elastic material per se, has made the broad construction impossible. With the exception of cotton, all of the materials mentioned by him are of a "loose, separate or disintegrated" character. That these adjectives apply to certain varieties of cotton is also true. When "cotton" is found in such company is it not clear that disintegrated cotton is intended? Noscitur a sociis. But the matter is not left to inference. The model shows a disintegrated filling, and the history of the proceedings in the patent office is in direct opposition to the complainants' contention. It appears, in brief, that in order to get the patent allowed it was necessary for Sperry to limit himself to the loose material as these words are interpreted by the defendants, and that the interpretation contended for by the complainants was rejected by the officials. They expressly declined to issue a patent broad enough to cover a pad with a filling only loose relatively to the base and cover. The description abounds in expressions which seem entirely inconsistent with the complainants' contention. For instance, it says of the materials used as fillings: "These are disposed in a loose, separate, or disintegrated condition, so that when hardened by being trodden down they can be 'worked' or separated again to restore the necessary softness or elasticity to the pad." This language cannot be made to quadrate with the complainants' construction of the claims. Material which is compact cannot be 'worked,' material which has not been separated cannot be separated again.

It is unnecessary to proceed further, as the court is constrained to hold that the patentee has in the most clear and explicit manner limited himself to a construction which does not include the defendants' pads. That he has done so seems plain; it is, therefore, unnecessary to discuss the proposition whether he should have been required to do so. We are dealing with what was done, not with what might have been done.

It is said that the patents referred to should not be considered because no expert has been called by the defendants to explain them. So far from being condemned this practice should be encouraged. In causes involving complicated machines or electrical or chemical combinations the presence of an expert is always helpful and is often absolutely necessary, especially if he be both learned and sincere. But in a cause like the present where the structure in controversy is so simple that a child can hardly fail to compre-

hend it the employment of experts not only increases the expenses of the litigants, but also the labor of the court. For the reason, then, that the defendants' pads do not have a loose, separate or disintegrated filling and do not have a covering case sewed or secured to the edges of the base, it must be held that they do not infringe. The bill is dismissed with costs.